State *v.* Dart.

———•◄◆►•———

THE STATE *vs.* CURTIS DART.

29  153<br>74  482

Upon an indictment for murder, the case was made out against the prisoner wholly by circumstantial evidence. The deceased, who was an aged woman, was found about noon, lying on her face in a pool of water near her house. The prisoner lived with her as a hired man, and there was no other member of the family. The theory of the defense was, that the deceased had been engaged in household work near the pool, and had fallen into it in a fit; and the prisoner claimed that she was subject to fits, and offered evidence of a declaration made by her about a year before, that she was subject to fits and had several times fallen on her face when taken with them. Held, that the evidence was inadmissible.

The settled rules of law with regard to the admission of evidence are to be applied in civil and criminal cases alike.

INDICTMENT for murder. On the trial of the case to the jury, the attorney for the state offered evidence to prove that the deceased, Lorana Wood, was found dead, lying near her dwelling house, about twelve o'clock on the 14th day of July, 1859, with her face and head in a pool of water; that the prisoner, who at the time of her death was in her employ as a hired man, had some weeks before made some threats against her; that he was an intemperate man, and much intoxicated on the day of her death, and that shortly after her body was found, he was in her house, in the room usually occupied by him, upon the bed, apparently asleep; that there was mud on his boots which corresponded in appearance with the mud about the pool; that an altercation had taken place in the morning of the same day, between the prisoner and the deceased; that no other person excepting the prisoner and

the deceased was at the house after she was seen alive in the morning until after her death; and that there were marks and scratches on the floor of the house, apparently made by the heel of a boot with nails in it, and which indicated that there had been a struggle in the house. These, with other circumstances, were relied on by the attorney for the state for the conviction of the prisoner. The prisoner claimed that the deceased who was an aged woman, had that morning been at work making cheese, and doing other household work about a spring, within a few feet of the pool; that she was subject to fits, and falling upon her face, at which times she would be helpless; and that it was fair to presume that she fell accidentally into the pool, and that her death was natural; and the prisoner offered one Taylor as a witness, to prove that he had lived with the deceased about a year before her death, and that she then stated to him that she was subject to fits, and had several times fallen upon her face when alone. To this evidence the attorney for the state objected on the ground that it was mere hearsay testimony, and the court sustained the objection and rejected the testimony.

The prisoner was found guilty of murder in the second degree, and moved for a new trial.

*Hubbard* and *Ransom*, in support of the motion.

The testimony, in connection with the circumstances recited in the motion, was very important to the accused, and should have been admitted. It was a question in relation to the physical condition of Mrs. Wood about a year before her death, and the testimony went to show that the ailment of which she complained was a permanent one—to wit: that she was subject or liable to fits, and falling upon her face in them. No witness could swear to this fact from personal observation, but Taylor knew it by means of her declarations to him. And why should he not have been heard? All hearsay is not to be rejected, and it was the best evidence the case afforded. It was evidence that would have convinced any person of the fact. She knew best her own bodily infirmities, and certainly was under no bias to misrepresent. She was subject to a per-

State *v.* Dart.

manent infirmity, and her declarations going to explain it may fairly be considered as part of the *res gestæ.* Besides, it is the duty of the court, in so important a cause, to amplify the rules of evidence in favor of life and liberty. 1 Greenl. Ev., §§ 100, 102, 108. *Aveson* v. *Kinnard,* 6 East, 188. 1 Phill. on Ev., 191.

*Sedgwick,* state attorney, contra.

SANFORD, J. In the court below, the prisoner offered a witness to testify that, about a year before Mrs. Wood's death, " she stated to him that she was subject to fits, and had several times fallen upon her face when alone." We think the testimony was properly rejected. It was evidence of the mere declaration of a third person, regarding past events, made long before the occurrence which was the subject of inquiry, out of court, not under the sanction of an oath, and by one who neither was nor could be subjected to a cross-examination. It was hearsay within all the terms of the definition, liable to all the objections against evidence of that character, and falling within none of the recognized exceptions to the rule of law by which hearsay evidence is to be excluded from the consideration of the jury. It is indeed true that " the representations made by a sick person of the nature, symptoms and effects of the malady under which he is suffering at the time, are received," not as hearsay but " as original evidence ; " (1 Greenl. Ev., § 102 ;) such representations being, it is supposed, the natural language of the feelings which such malady produces. But it is an indispensable element in the proposition, that the representation should be made at the very time when the malady is in active operation. The narrative which the sufferer gives of his feelings after the cause of them has ceased to operate, is the language of the memory, not of the feelings which the malady excites. An individual receives a wound, and, before his recovery, complains of suffering from it. His complaint is evidence of his suffering and its degree, because it is the natural language of the feelings which such a cause produces ; but what the same individual after his recovery

should say to a third person about those sufferings, would be the history of a past event—" hearsay,"—to which, in the administration of justice, the law awards no credit, because it can not apply to it those tests of truth which it deems indispensable, the administration of a judicial oath, and an opportunity to cross-examine the narrator in the presence of the court. In the case at bar, the fits spoken of by Mrs. Wood were occasional in occurrence and temporary in effect, and there is no claim that when she spoke she was in any way suffering from their operation.

A witness who had seen Mrs. Wood while the fit was on her, might testify to what he saw, and to all the representations, by words or otherwise, which she then made of her existing feelings ; and Mrs. Wood herself might subsequently testify what those feelings were ; but no opinion which either of them could give, would be admissible to prove the permanency of the ailment, or Mrs. Wood's peculiar liability to the recurrence of the malady. Facts are the appropriate subjects of evidence ; inferences and conclusions, it is the peculiar province of the jury to deduce.

It is no answer to the objection, that no witness could testify that Mrs. Wood's ailment was a permanent one from personal observation. Any witness who had seen her when the supposed fit was on her, could testify to her appearance and declarations, and from those facts the jury would decide upon the character of the malady and her liability to the recurrence of its attacks. Nor is it an answer to the objection, that no witness ever saw her when the fit was on her. If the fact inquired for is in its nature perceptible to the senses, it must be proved by the actual witnesses of its existence. Hearsay evidence is not admissible merely because in the particular case no better can be had.

Finally, whatever the promptings of our feelings in regard to the prisoner might be, we can not yield to the suggestion of his counsel, that " it is the duty of the court in so important a cause to amplify the rules of evidence in favor of life and liberty." It is the duty of the court to administer the law in every case alike. In a doubtful case indeed, the scales of jus-

tice should incline to the side of mercy. But the rule under consideration is one which approves itself to our reason, and it has been sanctioned by the judgment of every court in which the common law furnishes the rules of procedure and determination, and by the wisdom and experience of ages.

A new trial must be denied.

In this opinion the other judges concurred ; except STORRS, C. J., who, having sat on the trial in the court below, did not sit in the case here.

New trial not advised.